[Cite as *Akron Centre Plaza L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035.]

AKRON CENTRE PLAZA LIMITED LIABILITY COMPANY, APPELLANT, *v*. SUMMIT COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Akron Centre Plaza L.L.C. v. Summit Cty. Bd. of Revision*,

128 Ohio St.3d 145, 2010-Ohio-5035.]

*Real property taxation — R.C. 5715.19(A)(2)(d) — Prohibition on multiple valuation complaints within triennium — Exception for change in occupancy of rental property.*

(No. 2009-2137 — Submitted October 13, 2010 — Decided October 21, 2010.)

APPEAL from the Board of Tax Appeals, No. 2008-K-2087.

_____

**Per Curiam.**

**{¶ 1}** This is an appeal from a decision of the Board of Tax Appeals ("BTA") in a real property valuation case. In its decision and order, the BTA affirmed the decision of the Summit County Board of Revision ("BOR") to dismiss the tax-year-2007 complaint on the grounds that it was the second complaint filed within a three-year "interim period" in violation of R.C. 5715.19(A)(2). In doing so, the BTA rejected the argument of appellant, Akron Centre Plaza Limited Liability Company ("Akron Centre"), that its tax-year-2007 complaint falls within the exception at R.C. 5715.19(A)(2)(d) based upon a loss of occupancy in October 2006. According to the BOR and the BTA, that exception does not apply, because the occupancy loss had already been "taken into consideration with respect to the prior [tax-year-2006] complaint," thereby violating an explicit condition of R.C. 5715.19(A)(2).

**{¶ 2}** Renewing its principal argument before this court, Akron Centre contends that the substantial economic impact of the decline in occupancy of its building could be "taken into consideration" only after that decline had actually

occurred during 2006.  Under this theory, taking into consideration the *prospect* of the decline as of January 1, 2006, does not equate to taking into consideration the *actual* impact on January 1, 2007, once the decline had actually occurred in October 2006.

**{¶ 3}**  Although we do not embrace the same argument that Akron Centre advances, our construction of R.C. 5715.19(A)(2)(d) leads us to conclude that Akron Centre's position is correct.  We therefore reverse and remand for further proceedings.

**Facts**

**{¶ 4}**  Akron Centre owns an office building in downtown Akron that was constructed in 1981 and that encompasses rentable area of 195,623 square feet.  In Summit County, tax year 2005 was the year of a triennial update and accordingly the first year of an interim period leading up to the sexennial reappraisal in 2008.  On March 30, 2007, Akron Centre filed a complaint against the valuation of the property for tax year 2006, the second year of the triennial period.[1]  The complaint sought a reduction from a true value of $16,710,250 to $11,600,000.

**{¶ 5}**  In conjunction with the 2006 complaint, Akron Centre presented an owner's opinion of value to the BOR, which urged that the BOR adopt a value of $15,860,000 based on an income approach.  This opinion specifically referred to an October 17, 2005 letter from the principal tenant of the building (the law firm Buckingham, Doolittle & Burroughs) declaring its intent to vacate the space

---

1. The school board argues that Akron Centre had no need to file a complaint for tax year 2007 because it could have asked for a redetermination of the property's value under the "continuing complaint" provision of R.C. 5715.19(D).  See *Fogg-Akron Assocs., L.P. v. Summit Cty. Bd. of Revision*, 124 Ohio St.3d 112, 2009-Ohio-6412, 919 N.E.2d 730, ¶ 8.  But if the 2007 complaint was jurisdictionally valid, it constituted a "fresh complaint" that would have terminated the continuation of the prior complaint.  Id., ¶ 10.  Moreover, there is some question on the present record whether the 2006 complaint became a continuing complaint, given that the continuing-complaint provision is triggered by a board of revision's failure to act within 90 days of the filing of a complaint or countercomplaint.  Id., ¶ 8.

it had leased since 1984 as of the expiration of the lease on October 31, 2006. The opinion states that "[t]his negative news was disclosed and therefore public as of the January 1, 2006 lien date and would have a negative effect on the value of the building as of the tax lien date." When the BOR on August 3, 2007 ordered no change in valuation, Akron Centre appealed to the BTA, and that appeal became BTA case No. 2007-K-859. That case terminated when the BTA issued a decision and order on March 16, 2010, adopting a stipulated taxable value for tax year 2006 – a taxable value that reflected an agreed true value of $12,500,000.

{¶ 6} On March 28, 2008, Akron Centre filed another valuation complaint, this time challenging the auditor's valuation for the 2007 tax year. The new complaint sought a reduction from a true value of $16,710,250 to $10,000,000. On the complaint form, Akron Centre checked the box that gives as a reason for the reduction an "[o]ccupancy change of at least 15% [that] had a substantial economic impact on the property." That checkmark alleges that the present case comes within one of the exceptions to the usual prohibition against multiple complaints within a triennial period. The Akron City Schools Board of Education filed a countercomplaint seeking to retain the valuation of $16,710,250 for tax year 2007.

{¶ 7} At the BOR hearing, Akron Centre presented the appraisal report and testimony of Roger Ritley, who opined a value of $11,000,000 as of January 1, 2007. For its part, the school board sought dismissal of the complaint pursuant to R.C. 5715.19(A)(2), arguing that the 2007 complaint constituted a prohibited second complaint within the three-year interim period. On October 10, 2008, the BOR issued its decision, which dismissed the complaint because it was the second complaint filed within the interim period.

{¶ 8} Akron Centre appealed to the BTA, where the school board filed a motion that, although it was styled a motion to dismiss, was treated by the BTA as a motion to affirm the BOR's dismissal. The BTA did not hold a hearing, but

reached its decision on the basis of the BOR transcripts in the current case and in the 2006-tax-year case, along with the briefs filed by the parties. The BTA concluded that although the departure of the Buckingham law firm during 2006 involved a change in occupancy that had a substantial economic impact for the 2007 tax year, and although that event occurred after the 2006 lien date, R.C. 5715.19(A)(2)(d) did not permit the filing of the complaint. The BTA reasoned that the exception did not apply, because the change in occupancy had been "taken into consideration with respect to the prior complaint" for tax year 2006. Akron Centre appealed, and we now reverse.

**Analysis**

{¶ 9}   When a BTA decision is appealed, this court looks to see whether that decision was "reasonable and lawful." R.C. 5717.04. In reviewing a BTA decision under this standard, we acknowledge that " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations,' " we will affirm them. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483. On the other hand, we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " Id., quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789.

{¶ 10} This appeal presents a question of law for two reasons. First, determining an element of the jurisdictional sufficiency of a valuation complaint has been held to present an issue of law on appeal, see *Toledo Pub. Schools Bd. of Edn. v. Lucas Cty. Bd. of Revision*, 124 Ohio St.3d 490, 2010-Ohio-253, 924 N.E.2d 345, ¶ 14, fn. 2, and we have traditionally regarded R.C. 5715.19 as setting forth jurisdictional prerequisites to a board of revision's review of the auditor's determinations, see *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 17;

4

*Victoria Plaza L.L.C. v. Cuyahoga Cty. Bd. of Revision* (1999), 86 Ohio St.3d 181, 183, 712 N.E.2d 751. Second, the dispute between Akron Centre and the school board concerns not the underlying facts of what occurred with respect to the complaint for tax year 2006, but whether those essentially undisputed facts indicate that the economic effect of the decrease in occupancy during 2006 was "taken into consideration" as that term is used in R.C. 5715.19(A)(2). Thus, the dispute calls for a construction of the statutory language – which is a question of law. *Brennaman v. R.M.I. Co.* (1994), 70 Ohio St.3d 460, 466, 639 N.E.2d 425. It follows that our review is not deferential, but de novo. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8.

> *R.C. 5715.19(A)(2)(d) refers to the economic effect of an actual change in*
> *occupancy, not the prospect that such a change may occur in the future*

{¶ 11} R.C. 5715.19(A)(2) prohibits a complainant from filing a second complaint within the interim period unless the new complaint "alleges that the valuation or assessment should be changed due to one or more of the following circumstances that occurred after the tax lien date for the tax year for which the prior complaint was filed *and that the circumstances were not taken into consideration with respect to the prior complaint.*" The circumstance at issue in this case reads as follows:

{¶ 12} "An increase or decrease of at least fifteen percent in the property's occupancy has had a substantial economic impact on the property." R.C. 5715.19(A)(2)(d).

{¶ 13} Akron Centre presented as part of its claim for reduction for tax year 2006 a letter from its principal tenant, indicating that the tenant would vacate in October 2006. Akron Centre argued that the public knowledge of the tenant's expression of intent would tend to reduce the property value as of January 1, 2006. This reduction in value would probably occur even though the tenant had

not yet left and might decide not to leave, and even though Akron Centre might have avoided the decrease in occupancy by reletting the premises during 2006.

{¶ 14} The parties do not dispute that this argument was "taken into consideration" by the BOR for tax year 2006, even though the BOR ordered no decrease in value for that tax year. Instead, the parties disagree whether consideration of the *prospect* of the principal tenant's departure as of January 1, 2006, should be deemed equivalent to taking into consideration the *effect of the tenant's actual departure* (coupled with a failure to relet the space) as of January 1, 2007.

{¶ 15} We conclude that the circumstance that Akron Centre had already presented for consideration for tax year 2006 was *not* the same circumstance that Akron Centre presented in the tax-year-2007 complaint. In plain terms, R.C. 5715.19(A)(2)(d) describes an economic impact that is caused by an increase or decrease in occupancy of 15 percent or more, and as a matter of sheer logic, the effect of a cause comes into being only *after and as a result of* the cause. The economic impact of the *prospect* of a change in occupancy is not what the provision at (A)(2)(d) is describing; rather, (d) refers to the economic effect of an *actual* increase or decrease in occupancy. Accordingly, the actual vacating of the premises during tax year 2006 does invoke the exception at (A)(2)(d) for a complaint that relates to tax year 2007, but not for a complaint that relates to tax year 2006.[2]

{¶ 16} Akron Center's tax-year-2006 complaint had raised the issue of the prospective departure of a major tenant during 2006. By contrast, the tax-year-2007 complaint raised the issue of the economic impact of the actual departure of the tenant and the vacancy of the premises as of January 1, 2007. The

_____

2. We recognize that the BTA has expressed a contrary view on this point, and we discuss those decisions below.

consideration of the economic impact of the prospective departure of the tenant does not equate to consideration of the economic impact of the actual departure of the tenant.[3] R.C. 5715.19(A)(2) makes the exceptions listed at (a) through (d) unavailable if the "circumstances were * * * taken into consideration with respect to the prior complaint." As discussed, Akron Centre's tax-year-2007 complaint raised a circumstance described by R.C. 5715.19(A)(2)(d) – *but Akron Centre's tax-year-2006 complaint did not*. The "circumstances" to which the statute refers are the ones described at (a) through (d); it follows that the circumstance that Akron Centre presented for tax year 2006 was not a circumstance for purposes of R.C. 5715.19(A)(2), and as a result, the consideration of it did not bar the tax-year 2007 complaint.

*R.C. 5715.19(A)(2) explicitly requires that the allegation of a change in occupancy must furnish grounds for revaluing the property in the current tax year*

{¶ 17} January 1 is the tax lien date on which the property must be valued for any particular tax year. *Freshwater v. Belmont Cty. Bd. of Revision* (1997), 80 Ohio St.3d 26, 29-30, 684 N.E.2d 304 ("the first day of January of the tax year in question is the crucial valuation date for tax assessment purposes"); *Olmsted Falls Village Assn. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 552, 555, 664 N.E.2d 922 ("the BTA must base its decision on an opinion of true value that expresses a value for the property as of the tax lien date of the year in question"). It follows that a change in occupancy that has an economic effect on

---

3. See *Zell v. Hamilton Cty. Bd. of Revision* (July 22, 1994), BTA No. 92-S-1226, 1994 WL 391642, * 3 ("simply because the possibility of a future decrease in occupancy was brought to the BOR's attention at the hearing on the first complaint does not necessarily mean that such information was 'taken into consideration' by the BOR in rendering its decision," inasmuch as "such information was apparently rejected by the BOR because the vacancy had not yet occurred, but was instead a mere possibility"); accord *580 Walnut Partners v. Hamilton Cty. Bd. of Revision* (June 30, 1998), BTA No. 96-D-453, 1998 WL 375111, * 4 (despite tenant's "notice in March 1994 that it would not renew its lease in the year 1995, the fact remains that the 54,524 s.f. was in fact *occupied* during the year 1994, which is the tax year to which the subject complaint pertains," and "the anticipated cancellation of the lease did not increase or decrease the amount of square footage occupied by the [tenant] in 1994" [emphasis sic]).

the value of the property, which is what R.C. 5715.19(A)(2)(d) describes, must occur before January 1 to have an effect for the current tax year.

{¶ 18} Because of this, the BTA has erred when it has treated a decrease in occupancy that occurs after the lien date of the current tax year as a circumstance that justifies the filing of a second complaint in the interim period pursuant to R.C. 5715.19(A)(2)(d). See *Normar Corp. v. Hamilton Cty. Bd. of Revision* (Nov. 12, 1993), BTA No. 92-K-1110, 1993 WL 472895, *2-3; see also *Southgate USA v. Cuyahoga Cty. Bd. of Revision* (June 7, 1996), BTA Nos. 94-P-1387, 94-P-1388, 1996 WL 312166; *Kogelman v. Cuyahoga Cty. Bd. of Revision* (Oct. 19, 2001), BTA No. 2000-N-1895; *Welsh-Kiesland L.L.C. v. Hamilton Cty. Bd. of Revision* (Feb. 16, 2010), BTA No. 2008-V-1825, 2010 WL 582389. The BTA's disposition of this issue is mistaken because the plain language of R.C. 5715.19(A)(2) requires that the complainant allege that the "valuation or assessment *should be changed* due to one or more" of the specified circumstances. (Emphasis added.) An actual change in occupancy that occurs *after* the lien date and that has a substantial impact on the value of the property does not furnish a reason to change the valuation on the lien date itself, because its economic effect had not yet occurred as of that earlier date. Accord *Millstone Dev., Ltd. v. Franklin Cty. Bd. of Revision* (Feb. 7, 2003), BTA No. 2002-V-1989, 2003 WL 302395, affirmed, 10th Dist. No. 03AP-202, 2004-Ohio-1140 (second-filed complaint dismissed where owner based a second complaint on a change in occupancy that occurred mostly after the tax-lien date for the second complaint).[4]

*A restrictive reading of R.C. 5715.19(A)(2)(d) does not violate*

*principles of statutory construction*

---

4. In *Millstone*, both the BTA and the court of appeals held that R.C. 5715.19(A)(2)(d) did not permit the filing of the tax-year-2000 complaint, because the factors that led to decreased occupancy had been taken into consideration in connection with the 1999 complaint. But the recitation of the facts in the BTA decision makes clear that the bulk of the decrease in occupancy

{¶ 19} We acknowledge that our reading of R.C. 5715.19(A)(2)(d) means that the economic effect of a change in occupancy can rarely if ever have been "taken into consideration" for the prior year. Because January 1 is the tax-lien date on which the property must be valued for any particular tax year, the economic effect of a change in occupancy cannot have been "considered" in the prior year's valuation unless it occurred *before* that date. Yet R.C. 5715.19(A)(2)(d) permits a second filing within an interim period only when a change in occupancy has taken place *after* the tax-lien date of the tax year for which the earlier complaint was filed. As a result, the circumstance described at R.C. 5715.19(A)(2)(d) cannot have already been taken into consideration in connection with the earlier complaint.

{¶ 20} The fact that the taken-into-consideration restriction has little or no application with respect to R.C. 5715.19(A)(2)(d) might conceivably furnish a reason to adopt a different construction of the statutory language. See *Church of God in N. Ohio v. Levin*, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, ¶ 30 (court "should construe statutes to give effect to all the enacted language"), citing *State ex rel. Bohan v. Indus. Comm.* (1946), 147 Ohio St. 249, 251, 34 O.O. 151, 70 N.E.2d 888 (courts should "accord meaning to each word of a leglislative [sic] enactment if it is reasonably possible to do so"). But this factor has little weight because the restriction applies fully to R.C. 5715.19(A)(2)(a), which applies when an arm's-length sale furnishes the criterion of value for the property.

{¶ 21} An arm's-length sale may take place *after* the lien date of a prior tax year and still furnish the criterion of value for that earlier year. R.C. 5713.03 ("In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time,

___

took place during 2000. *Millstone Dev.*, 2003 WL 302395, at * 3. As a result, the decrease did not have an adverse effect that justified reducing the value of the property as of January 1, 2000.

*either before or after the tax lien date*, the auditor shall consider the sale price * * * to be the true value for taxation purposes [emphasis added]"); *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision,* 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, paragraph one of the syllabus. When a complainant urges that the price derived from a sale after the lien date of the prior year be used to determine the value for that prior year, the board of revision and the BTA may use the sale price or may find that the sale was not an arm's-length transaction. In the latter case, the complainant may not file a second complaint within the interim period and urge that the sale price furnishes the criterion of value, because the sale price was already "taken into consideration" for the earlier year.[5]

**{¶ 22}** Because the taken-into-consideration restriction fully applies to the arm's-length-sale exception at R.C. 5715.19(A)(2)(a), principles of statutory construction do not militate against our restrictive reading of R.C. 5715.19(A)(2)(d). Accordingly, we hold that the notice of the prospective departure of a tenant does not qualify as a decrease in occupancy for purposes of R.C. 5715.19(A)(2)(d) and that consideration of the effect of such a notice on the property's value for a prior year does not make the exception at (d) unavailable when another complaint is filed for a later year after the departure has created an actual decrease in occupancy.

*Quantifying the economic effect of a decrease in occupancy is a substantive issue of value to be decided by the boards of revision and the BTA*

**{¶ 23}** The BTA held that but for the question whether the issue had been "taken into consideration" previously, Akron Centre's "allegation and presentation of evidence in support of these [decreased occupancy] conditions would initially appear to be sufficient to permit its 2007 tax year challenge despite

---

5. If the board of revision ruled in connection with the earlier complaint that the sale was not recent with respect to the prior year's lien date, the arm's-length sale price has not been "taken

its having filed for the prior tax year." *Akron Centre Plaza L.L.C. v. Summit Cty. Bd. of Revision* (Nov. 3, 2009), BTA No. 2008-K-2087, 2009 WL 3705128, \*3. Apart from its support for the finding that the decrease in occupancy had already been "taken into consideration," the school board has not challenged the applicability of R.C. 5715.19(A)(2)(d) on other grounds.

{¶ 24} Moreover, although the issue of how great an impact the decrease in occupancy has had on the value of real property is initially a jurisdictional question, it ultimately merges into the substantive issue of what the property is worth. "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities \* \* \*." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor* (1968), 15 Ohio St.2d 52, 44 O.O.2d 30, 239 N.E.2d 25, syllabus. Accordingly, this case should be remanded for a determination of the value of the property.

### Conclusion

{¶ 25} For the reasons set forth, the BTA erred by affirming the BOR's dismissal of Akron Centre's valuation complaint for tax year 2007. We therefore reverse the BTA's decision and remand with the instruction that the BTA remand the cause to the BOR for consideration of the merits of Akron Centre's 2007 complaint.

Decision reversed

and cause remanded.

BROWN, C.J., and PFEIFER, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON, J., concurs in judgment only.

---

into consideration." See *Worthington City Schools Bd. of Edn.*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 20.

_____

Siegel, Siegel, Johnson & Jennings Co., L.P.A., J. Kieran Jennings, and Jason P. Lindholm, for appellant.

Brindza, McIntyre & Seed, L.L.P., David H. Seed, and Jennifer A. Hoehnen, for appellee Akron City School District Board of Education.

_____