[Cite as *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 2013-Ohio-1419.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

BOARD OF EDUCATION OF THE
AKRON CITY SCHOOL DISTRICT

    Appellee

    v.

SUMMIT COUNTY BOARD OF
REVISION, et al.

    Appellee

    and

OLIVE HEALTH CARE, INC.

    Appellant

C.A. No.     26503


APPEAL FROM JUDGMENT
ENTERED IN THE
OHIO BOARD OF TAX APPEALS
COUNTY OF SUMMIT, OHIO
CASE No.    2008-W-1893

DECISION AND JOURNAL ENTRY

Dated: April 10, 2013

WHITMORE, Judge.

{¶1}    Appellant, Olive Health Care, Inc. ("Olive"), appeals from the judgment of the Board of Tax Appeals. This Court affirms.

I

{¶2}    Bridgepark Real Estate, LLC ("Bridgepark") is the owner of property located at 145 Olive Street in Akron, Ohio ("the Property"). The property houses a 168-bed nursing facility. Bridgepark purchased the Property for $6,497,886 in November 2007 from Kindred Healthcare Operating, Inc. It then leased the Property to Olive for Olive to assume the operation of the nursing facility. Olive's renewable ten-year lease agreement included an option to

purchase the Property from Bridgepark and required Olive to pay both rent and the taxes on the Property.

{¶3}   Earlier the same year that Bridgepark purchased the Property, another sales transaction had taken place.  Specifically, in July 2007, Kindred Healthcare Operating, Inc. (the entity who later sold to Bridgepark) had purchased the Property from Ventas Realty Limited Partnership at the substantially higher purchase price of $17,620,000.  Thus, in 2007, two sales of the Property occurred: one in July for $17,620,000, and one in November for $6,497,886.  For the 2007 tax year, the Summit County Fiscal Officer had valued the Property at $3,137,460.

{¶4}   In March 2008, the Board of Education for the Akron City School District ("the School Board") filed a complaint with the Board of Revision, seeking an increase in the Property's valuation for purposes of the 2007 tax year and beyond.  The School Board asked the Board of Revision to increase the fair market value of the Property to $17,620,000, based on the sale that had taken place in July 2007.  In response, Olive filed a counter-complaint with the Board of Revision in which it requested that the Board of Revision maintain the recorded fair market value of the Property.  The Board of Revision ultimately agreed with Olive and found that the Property's fair market value was $3,137,460.

{¶5}   Subsequently, the School Board appealed the Board of Revision's decision to the Board of Tax Appeals, and the Board of Tax Appeals held a hearing.  Both Olive and the School Board then submitted post-hearing briefs.  In its decision reversing the Board of Revision, the Board of Tax Appeals held that (1) Olive lacked standing to participate in the proceedings, and (2) the School Board proved the July 2007 sale of the Property reflected the Property's true value. Consequently, the Board of Tax Appeals determined that the true fair market value of the Property was $17,620.000.

{¶6} Olive now appeals from the decision of the Board of Tax Appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

THE BOARD OF TAX APPEALS ERRED IN RULING THAT OLIVE HEALTH CARE LACKED STANDING TO FILE A COUNTER[-]COMPLAINT IN RESPONSE TO THE SCHOOL BOARD'S COMPLAINT SEEKING AN INCREASE IN THE MARKET VALUE OF THE SUBJECT PROPERTY.

{¶7} In its first assignment of error, Olive argues that the Board of Tax Appeals erred by concluding that it lacked standing to participate in the proceedings. Olive argues that, as a long-term lessee who was contractually obligated to pay the real estate taxes on the Property, it had standing to challenge any change in valuation. We disagree.

{¶8} "R.C. 5715.19 regulates the manner in which a person or entity may dispute the '[t]he determination of the total valuation or assessment of any parcel that appears on the tax list * * *.'" *Colvin v. Summit Cty. Bd. of Revision*, 9th Dist. No. 26329, 2012-Ohio-5394, ¶ 5, quoting R.C. 5715.19(A)(1)(d). The statute allows for the filing of a complaint to challenge valuation by "[a]ny person owning taxable real property in the county." R.C. 5715.19(A)(1). It further provides that after a property owner receives notice that there has been a challenge to the valuation of his property, the "property owner * * * may file a complaint in support of or objecting to the amount of alleged overvaluation, undervaluation, * * * or incorrect determination stated in [the] previously filed complaint * * *." R.C. 5715.19(B). The property owner will then be made a party to the action. *Id.*

{¶9} "[S]tanding to file valuation complaints is jurisdictional." *Victoria Plaza Ltd. Liability Co. v. Cuyahoga Cty. Bd. of Revision*, 86 Ohio St.3d 181, 183 (1999). "[T]o have

standing, one filing a valuation complaint as the owner of real property must own real property in the county when such person files the complaint to invoke the jurisdiction of the board of revision." *Id.* The "jurisdictional sufficiency of a valuation complaint * * * present[s] an issue of law on appeal * * *." *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, ¶ 10. Consequently, a reviewing court must conduct a de novo review to determine whether a complainant has standing. *Id.*

{¶10} Olive argues that it had standing to file a counter-complaint and challenge the School Board's valuation complaint because, as a long-term lessee who was obligated to pay real estate taxes on the Property, it was the true party in interest. "In cases that address issues of real property taxation, [however,] [the Supreme Court has] construed 'owner' narrowly to encompass only the legal-title holder and not the holder of an equitable interest in the property." *Gilman v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 154, 2010-Ohio-4992, ¶ 16. "[T]o be the owner of real property, the person must hold legal title to the property, not simply an equitable interest in the property." *Victoria Plaza Ltd. Liability Co.* at 183. "Though [a] lessee holds certain property interests, [the Court] regard[s] the legal title holder as the owner, from whom a lessee acquires an inferior interest." *Performing Arts School of Metro. Toldeo, Inc. v. Wilkins*, 104 Ohio St.3d 284, 2004-Ohio-6389, ¶ 14. "Since R.C. 5715.19 does not contain language allowing someone other than the person holding legal title to file a complaint, * * * the owner of an equitable interest in real property does not have standing to file a complaint." *Victoria Plaza Ltd. Liability Co.* at 183.

{¶11} Olive does not dispute that it was not the legal title holder of the Property at the time it filed a counter-complaint and sought to challenge the School Board's proposed valuation. Moreover, Olive has not argued that it sought to challenge the proposed valuation in a

representative capacity as Bridgepark's agent. *Compare Toledo Pub. Schools Bd. of Edn. v. Lucas Cty. Bd. of Revision*, 124 Ohio St.3d 490, 2010-Ohio-253, ¶ 2. Olive's argument is that it is the "true party in interest," and thus, the de facto owner of the Property for purposes of R.C. 5715.19. It did not file its valuation challenge on Bridgepark's behalf. *Compare id.* at ¶ 30 (agent not precluded by R.C. 5715.19(A) from filing a valuation complaint "on behalf of the owner"). Rather, Olive filed its counter-complaint on its own behalf.

**{¶12}** Bridgepark retained title to the Property when it signed the lease agreement with Olive. The fact that Olive had an equitable interest in the Property was not sufficient to convey standing upon it. The Ohio Supreme Court's directive is clear: to have standing to challenge valuation, one must be the legal title holder of real property within the county. *See Victoria Plaza Ltd. Liability Co.* at 183. *See also Performing Arts School of Metro. Toledo, Inc.* at ¶ 12-14. Because Olive was not the legal title holder of the Property, the Board of Tax Appeals did not err by concluding that Olive lacked standing to challenge the School Board's complaint against the valuation. Olive's first assignment of error is overruled.

Assignment of Error Number Two

IRRESPECTIVE OF OLIVE'S STANDING, THE BOARD OF TAX APPEALS ERRED IN RULING THE JULY 12, 2007 SALE CONSTITUTED AN ARM'S LENGTH SALE WHERE THE ONLY EVIDENCE SUBMITTED BY THE SCHOOL BOARD CLEARLY DEMONSTRATES IT WAS NOT AN ARM'S LENGTH SALE.

**{¶13}** In its second assignment of error, Olive argues that the Board of Tax Appeals erred by valuing the Property at $17,620,000 because the School Board failed to prove that the July 2007 sale was the result of an arms-length transaction that reflected the Property's true value. According to Olive, even if it lacked standing to challenge the School Board's complaint, this Court still must undertake a review of the Board of Tax Appeals' valuation decision. Olive

argues that, regardless of its own standing, the Board of Tax Appeals had subject matter jurisdiction over the valuation and the School Board bore the burden of proving that an increase in the Property's value was warranted. Consequently, Olive argues, this Court still must review the record and determine whether the School Board met its burden.

{¶14} "Although a court may have subject matter jurisdiction over an action, if a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action." *State ex rel. Ralkers, Inc. v. Liquor Control Comm.*, 10th Dist. No. 04AP-779, 2004-Ohio-6606, ¶ 35, quoting *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77 (1998). Moreover, if a party lacks standing to prosecute an action in lower court proceedings, it necessarily follows that the party "continues to lack standing to prosecute an appeal from [those proceedings]." *Adkitality, Inc. v. Hokes*, 9th Dist. Nos. 23595 & 23596, 2007-Ohio-4281, ¶ 7. Because we have already determined that Olive did not have standing to challenge the School Board's valuation complaint, it follows that Olive does not have standing to challenge the valuation on appeal. Olive's argument that the Board of Tax Appeals erred in its ultimate valuation decision is moot. Therefore, we decline to address Olive's second assignment of error. *See* App.R. 12(A)(1)(c).

III

{¶15} Olive's first assignment of error is overruled and its second assignment of error is moot. The judgment of the Board of Tax Appeals is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Ohio Board of Tax Appeals, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶16} I would sustain Olive's first assignment of error because the Board of Tax Appeals erred in concluding that Olive lacked authority under R.C. 5715.19(A)(1) to file its counter-complaint in the board of revision proceeding. Although it is true that Olive is not the owner of the property at issue in this case, it filed as a representative of the owner, pursuant to the agency relationship established in its lease agreement. *See Palm Beach Mall, Inc. v. Cuyahoga Cty. Bd. of Revision*, 96 Ohio App.3d 549, 554 (8th Dist.1994) (stressing that a lessee

may proceed before the board of revision on behalf of the owner only by virtue of an agency relationship).

{¶17} The Board mistakenly focused on the holding of *Victoria Plaza Ltd. Liab. Co. v. Cuyahoga Cty. Bd. of Revision,* 86 Ohio St.3d 181 (1999), because that case interpreted the 1988 version of R.C. 5715.19. At that time, although R.C. 5715.19 authorized certain representatives of counties and municipal corporations to represent the government's interest in receiving property tax revenues, it granted explicit authority only to the property owner to challenge its responsibility to pay assessed taxes. In fact, the Court stressed that its decision was constrained by the limited language of the statute at that time:

> Since R.C. 5715.19 does not contain language allowing someone other than the person holding legal title to file a complaint, we conclude that the owner of an equitable interest in real property does not have standing to file a complaint.

*Victoria Plaza*, 86 Ohio St.3d at 183.

{¶18} Effective March 30, 1999, however, the General Assembly revised R.C. 5715.19 "to clarify who may file a complaint with the county board of revision." Ohio 1988 Session Law Service, H.B. No. 694. Through those amendments, the language of R.C. 5715.19(A) was significantly broadened to enumerate several types of individuals and entities who were authorized to represent the interests of the property owner before the board of revision.[1] Moreover, the Ohio Supreme Court has broadly interpreted that language to include individuals and entities, even if not listed in the statute, who are contractually authorized to represent the property owner in proceedings before the board of revision. *Toledo Public Schools Bd. of Edn. v. Lucas Cty. Bd. of Revision*, 124 Ohio St.3d 490, 2010-Ohio-253, ¶ 15.

---

[1] Although the revisions targeted specific cases pertaining to non-lawyers filing on behalf of the property owner, none of those concerns are relevant here because Olive's counter-complaint was filed by an attorney. *See Toledo Public Schools Bd. of Edn. v. Lucas Cty. Bd. of Revision*, 124 Ohio St.3d 490, 2010-Ohio-253, ¶ 25-28.

{¶19} In *Toledo Public Schools*, the Court emphasized that the amendment to R.C. 5715.19(A)(1) was not intended to be exhaustive or to restrict who may represent the owner but was meant to "widen the pool of persons who may file a property-valuation complaint on behalf of the property owner." (Internal citations omitted.) *Id*. at ¶ 26, 30. Consequently, it held that a management company was authorized by R.C. 5715.19(A)(1) to file on behalf of the owner because the it was explicitly authorized by the management agreement: "Notably, [the management] agreement confers 'complete authority and responsibility' on [the management company] to pay taxes for the property and to file 'real estate valuation tax appeals when appropriate.'" *Id.* at ¶ 6. Because the management company demonstrated that it had authority to act on behalf of the owner and filed its complaint with the board of revision in its representative capacity, the Court concluded that it properly filed as an agent of the owner under R.C. 5715.19(A)(1). *Id*. at ¶ 31.

{¶20} Olive similarly filed its counter-complaint as a representative of the property owner in this case. Olive indicated in its complaint that it was not the property owner, identified Bridgepark as the property owner, and demonstrated that it had authority to proceed as a representative of Bridgepark. Olive explained through an attachment to the counter-complaint that it was the tenant of the 145 Olive Street property and that, pursuant to its lease agreement with the owner, Olive was "solely responsible for payment of the real estate taxes[.]" The attached lease agreement, at paragraph 6.4, further provided that Olive, as the lessee, "shall have the right to contest the amount or validity, in whole or in part, of any Taxes of Assessments (***the Contested Taxes and Assessments***) by appropriate proceedings diligently conducted in good faith[.]"

**{¶21}** Through the next several paragraphs of the lease, Olive's right and responsibility to challenge taxes and assessments is set forth in more detail. The lease explicitly provides that the owner/lessor of the property will not be required to join in the proceedings to contest taxes or assessments "unless the provisions of any law, rule or regulation at the time in effect shall require that such proceedings be brought by or in the name of real property owner or lessor[.]" As explained above, R.C. 5715.19(A) no longer requires that such proceedings be brought by or in the name of the property owner.

**{¶22}** By the explicit terms of its lease agreement with Bridgepark, Olive had sole authority to represent Bridgepark's interests in any proceedings to challenge taxes assessed on the 145 Olive Street property. Because there is no legal distinction between the operative terms of Olive's lease agreement with Bridgepark and the property management agreement in *Toledo Public Schools*, the Board of Tax Appeals erred in concluding that Olive lacked authority under R.C. 5715.19(A)(1) to file its counter-complaint with the board of revision. For these reasons, I respectfully dissent.

APPEARANCES:

T. DAVID MITCHELL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and MILTON C. RANKINS, Assistant Prosecuting Attorney, for Appellee.

DAVID H. SEED and SUSANNE M. DEGENNARO, Attorneys at Law, for Appellee.