[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati City School Dist. Bd. of Edn. v. Testa*, Slip Opinion No. 2014-Ohio-4647.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4647

CINCINNATI CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.*
TESTA, TAX COMMR., ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati City School Dist. Bd. of Edn. v. Testa*, Slip Opinion No. 2014-Ohio-4647.]**

*Exemption from real-property tax—R.C. 5709.08—School board failed to request notification of exemption applications—R.C. 5715.27—School board lacked standing to appeal.*

(No. 2013-1426—Submitted June 24, 2014—Decided October 23, 2014.)

APPEAL from the Board of Tax Appeals, No. 2012-Q-1047.

——————————

**KENNEDY, J.**

{¶ 1} This appeal involves appellee the city of Cincinnati's application for exemption from real-property tax for property that constitutes part of the city's convention center, the Duke Energy Center. Initially, the tax commissioner considered the application under the law that existed in 2006, the year the application was filed, and granted the exemption for 2006 but denied it for 2007

and the years thereafter. The city appealed to the Board of Tax Appeals ("BTA"), and during the appeal, new legislation was enacted that provided for an exemption in the present situation. On joint motion of the tax commissioner and the city, the BTA remanded the case to the tax commissioner.

{¶ 2} After the BTA remanded, appellant, the Cincinnati City School District Board of Education ("school board"), attempted to intervene as a party in order to argue before the tax commissioner that the newly enacted legislation was unconstitutional. The tax commissioner denied intervention and, applying the newly enacted legislation, granted the exemption for 2007 and later years. The school board appealed to the BTA, but the BTA dismissed the appeal on the grounds that the school board lacked standing to appeal under R.C. 5717.02.

{¶ 3} On appeal before this court, the school board contends that the particular circumstances of this case justify its belated attempt to participate in the proceedings. We disagree, and we therefore affirm the decision of the BTA.

## FACTS

{¶ 4} On September 14, 2006, the city of Cincinnati filed its application to exempt the property at issue, a 1.76 acre parcel that had recently been improved with a building that was to become part of the city's existing convention center. The city's application sought exemption under R.C. 5709.08, which provides for exemption of "public property used exclusively for a public purpose."

{¶ 5} When the application was filed, the school board did not have a request on file to be notified of exemption applications per R.C. 5715.27(B), nor did the school board make any effort to participate in the proceedings at that time.

{¶ 6} On March 22, 2011, more than four and a half years after the application was filed, the tax commissioner issued his final determination. The final determination granted the exemption for tax year 2006 along with the remission of taxes and penalties for tax year 2005, but exemption for tax years

2

2007 through 2011 was denied.[1] The final determination found, "Until 2006, it appears that the City of Cincinnati managed the center using its own employees." Grounds for the denial of exemption for the later years lay in the contract between the city and a private management company, Global Spectrum, L.P., an independent contractor that operated the property in the pursuit of profit, with the result that the property was no longer used exclusively for a public purpose. According to the commissioner, "the City of Cincinnati turned over the management of its City-owned Duke Energy Center to a for-profit partnership with a view to maximizing the net revenue for the City while allowing Global Spectrum to seek a profit from the operation of the facility. Through this action the City has effectively privatized the City-owned Duke Energy Center."

{¶ 7} Meanwhile, the city of Cincinnati was active on another front: the General Assembly. In the 2011 budget bill, the legislature added language to R.C. 5709.084; the amendment consisted of an exemption that was carefully tailored to apply to the Duke Energy Center:

> Real and personal property comprising a convention center owned by the largest city in a county having a population greater than seven hundred thousand but less than nine hundred thousand according to the most recent federal decennial census is exempt from taxation, regardless of whether the property is leased to or otherwise operated or managed by a person other than the city.

2011 Am.Sub.H.B. No. 153.

{¶ 8} The new statutory provision became effective on September 29, 2011, and uncodified law declared it to be "remedial" and provides as follows:

---

[1] The tax commissioner considered, in addition to the public-property/public-purpose exemption, two other exemptions that were found not to apply, and those exemptions are not at issue here.

Section 5709.084 of the Revised Code, as amended by this act, is remedial in nature and applies to the tax years at issue in any application for exemption from taxation or any appeal from such an application pending before the Tax Commissioner, the Board of Tax Appeals, any Court of Appeals, or the Supreme Court on the effective date of this act and to the property that is the subject of any such application or appeal.

2011 Am.Sub.H.B. No. 153, Section 757.95.

**{¶ 9}** At the time the legislature amended R.C. 5709.084, Cincinnati's appeal from the commissioner's final determination was pending at the BTA. On August 11, 2011, the city and the commissioner filed a joint motion for remand at the BTA, which the BTA granted on August 23.

**{¶ 10}** With the 2006 exemption application once more pending before the tax commissioner, the school board for the first time attempted to intervene. Through its assistant general counsel, the school board filed a request for notification under R.C. 5715.27(B) so that it will be notified when future applications for tax exemption are filed, and it also filed a document titled "Cincinnati City School District's Statement of Its Intention to Intervene and Oppose the City of Cincinnati's Application for a Tax Exemption" in the pending case. The statement expressed the school board's opposition to the retroactive application of the newly enacted language of R.C. 5709.084. In January 2012, the school board formally moved to intervene.

**{¶ 11}** A few months before the school board sought to intervene before the tax commissioner in this case, it filed a declaratory-judgment action in the Franklin County Court of Common Pleas against the city, the tax commissioner, and the county auditor, challenging the constitutionality of the 2011 legislation.

Franklin C.P. case No. 11 CVH 09-12158. By order dated December 29, 2011, Judge Frye invoked the doctrine of primary jurisdiction and stayed the declaratory-judgment case pending the outcome of the proceedings that are now before us.

{¶ 12} On February 21, 2012, the tax commissioner issued his final determination after remand from the BTA—it was the second final determination to address Cincinnati's exemption application. The decision granted the exemption pursuant to amended R.C. 5709.084. The decision also denied the school board's motion to intervene, on the authority of *Strongsville Bd. of Edn. v. Zaino*, 92 Ohio St.3d 488, 751 N.E.2d 996 (2001).

{¶ 13} On April 10, 2012, the school board appealed to the BTA. On motion by the tax commissioner, the BTA dismissed the school board's appeal on August 9, 2013. Citing the settled doctrine that "[w]here a statute confers the right of appeal, adherence to the conditions thereby imposed is essential to the enjoyment of the right conferred," *Am. Restaurant & Lunch Co. v. Glander*, 147 Ohio St. 147, 70 N.E.2d 93 (1946), paragraph one of the syllabus, as well as the corollary precept that in administrative proceedings, one must satisfy the standing requirements prescribed by statute, the BTA concluded that "the [board of education] failed to meet the statutory prerequisites of R.C. 5715.27(C) and therefore cannot invoke this board's jurisdiction on appeal." BTA No. 2012-Q-1047, 2013 WL 4508935, *2-3 (Aug. 9, 2013). The BTA therefore dismissed the appeal, and the school board appealed.

### THE SCHOOL BOARD'S PROPOSITIONS OF LAW

{¶ 14} The school board advances two propositions of law as follows:

1. When the General Assembly enacts a tax exemption statute that applies to a case pending before the Tax Commissioner or BTA, a school district has a right to participate in the case for

the limited purpose of challenging the constitutionality of the exemption.

> 2. The Challenged Provisions violate the Ohio Constitution.

### STANDARD OF REVIEW

{¶ 15} We review BTA decisions to determine whether they are reasonable and lawful. R.C. 5717.04; *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, citing *Columbus City School Dist. Bd. of Edn. v. Zaino*, 90 Ohio St.3d 496, 497, 739 N.E.2d 783 (2001). Although we defer to the BTA with respect to its determination of factual issues, we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Id.*, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001).

{¶ 16} This case presents a question of law, because it involves an issue of the BTA's jurisdiction, which turns on the proper application of the enabling statutes. *See Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. Accordingly, our standard of review in this appeal is de novo. *Id.*

### THE SCHOOL BOARD LACKED STANDING TO APPEAL UNDER R.C. 5717.02

*1. The school board's standing to appeal depended on*

*its compliance with R.C. 5715.27(C)*

{¶ 17} R.C. 5717.02 provides generally for appeals from determinations of the tax commissioner, including determinations whether property is exempt from taxation. It identifies who may appeal and defines the procedure for perfecting such appeals. The section specifically addresses the circumstances under which a board of education may appeal a determination of tax-exempt status:

> Appeals from a decision of the tax commissioner * * * concerning an application for a property tax exemption may be taken to the board of tax appeals by the applicant or by a school district that filed a statement concerning that application under division (C) of section 5715.27 of the Revised Code.

R.C. 5717.02(A).

{¶ 18} Thus, the school board's right to appeal in this case depended upon its compliance with R.C. 5715.27(C). In applying R.C. 5717.02 and 5715.27(C), we remain mindful that "[s]tanding is jurisdictional in administrative appeals 'where parties must meet strict standing requirements in order to satisfy the threshold requirement for the administrative tribunal' "—here, the term includes both the tax commissioner and the BTA—" 'to obtain jurisdiction.' " *Victoria Plaza Ltd. Liab. Co. v. Cuyahoga Cty. Bd. of Revision*, 86 Ohio St.3d 181, 183, 712 N.E.2d 751 (1999), quoting *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998), fn. 4.

*2. The school board failed to comply with R.C. 5715.27(C)*

{¶ 19} The statutes provide a two-step process for a board of education to be heard in regard to an exemption application that affects its district. First, R.C. 5715.27(B) authorizes a board of education to "request the tax commissioner * * * to provide it with notification of applications for exemption from taxation for property located within that district." If a board of education files such a request, the statute requires the tax commissioner to notify it of exemption applications. Once notice has been given, the board of education, pursuant to R.C. 5715.27(C), may "file a statement with the commissioner * * * and with the applicant indicating its intent to submit evidence and participate in any hearing on the application." Such a statement "shall be filed prior to the first day of the third

month following the end of the month in which that application was docketed by the commissioner." R.C. 5715.27(C). The timely filing of the statement confers the right to participate as a party to the proceedings:

> A statement filed in compliance with this division entitles the district to submit evidence and to participate in any hearing on the property and makes the district a party for purposes of sections 5717.02 to 5717.04 of the Revised Code in any appeal of the commissioner's * * * decision to the board of tax appeals.

R.C. 5715.27(C).

{¶ 20} The school board in this case neither filed a request to be informed of exemption applications in accordance with R.C. 5715.27(B) nor filed a timely statement in accordance with R.C. 5715.27(C). Indeed, the school board made no effort to participate until the second half of 2011, after the first final determination had been issued. Because of this failure to comply with R.C. 5715.27(B) and (C), the school board's appeal of the tax commissioner's determination granting the exemption failed to invoke the BTA's jurisdiction under R.C. 5717.02. Accordingly, it was proper for the BTA to dismiss the school board's appeal for lack of jurisdiction.

### 3. The tax commissioner's discretion to extend the time for filing a statement does not confer jurisdiction here

{¶ 21} The school board argues that the tax commissioner has "express, statutory authority to permit a school district to participate in a tax proceeding even if the statement was not filed within three months." In support, the school board quotes R.C. 5715.27(D), which states: "The commissioner * * * may extend the time for filing a statement under division (C) of this section."

**{¶ 22}** We detect a considerable disparity between the language of the statutory provision and the school board's assertion of what it means. The statute provides the tax commissioner with the discretionary power to grant *an extension of time*; the school board reframes this much more broadly as "authority to permit a school district to participate" despite its failure to ask for an extension within the time requirement.

**{¶ 23}** In regard to this disparity, our decision in *Strongsville*, 92 Ohio St.3d 488, 751 N.E.2d 996, is instructive. *Strongsville* addressed a situation in which a board of education had filed a document originally purporting to be a complaint against continued exemption pursuant to R.C. 5715.27(E). The complaint was dismissed as premature, and the board of education, on appeal to this court, recharacterized the filing as its statement of intent to participate in the hearing on the exemption application itself. According to this court, the flaw in this new theory was that the filing occurred after the deadline set forth in R.C. 5715.27(C). Just as in the present case, the board of education contended that the tax commissioner's authority to grant an extension justified its late filing. We disagreed, stating that "the [board of education] sought not so much an extension of the filing date as it sought a retroactive waiver of the filing date." *Id*. at 490.

**{¶ 24}** The reasoning of *Strongsville* applies a fortiori here. In *Strongsville*, the board of education's filing was only a month late; here, it is approximately five years late. As we observed in *Strongsville*, an extension of time typically involves a request made "prior to the expiration of the last date for filing." *Id*. Even assuming some measure of authority on the commissioner's part to grant a retrospective extension of time, we think that that authority would not extend to the situation here.

**{¶ 25}** Moreover, the school board's central claim below was not that it was entitled to an extension of the 2006 deadline, but that its statement of intent to participate *was timely on account of newly enacted legislation*. Yet the school

board is not able to point to any provision in the statute under which subsequent events, such as the enactment of new legislation, restart the period for filing the statement. To the contrary, the period for filing a statement of intent to participate is defined entirely and exclusively in terms of the lapse of time from the tax commissioner's docketing of the exemption application.

{¶ 26} It follows that the BTA acted reasonably and lawfully in rejecting the school board's request to participate in this case, inasmuch as the request sought a waiver of the timely filing requirement rather than an extension of time.

*4. The school board's additional arguments are unavailing*

{¶ 27} The school board maintains that it complied with the requirement that it "raise [challenges to the constitutionality of the application of a tax statute in a particular situation] at the first available opportunity during the proceedings before the Tax Commissioner." *South-Western City Schools Bd. of Edn. v. Kinney*, 24 Ohio St.3d 184, 494 N.E.2d 1109 (1986), syllabus. But the school board's reliance on *South-Western City Schools* is unavailing. The issue confronted by the BTA in this case is not whether the constitutional issue may be raised; it is whether the school board may become a party to the proceedings when it has not complied with the statutory prerequisites for intervening.

{¶ 28} As an additional argument, the school board maintains that compliance with R.C. 5715.27(C) and (D) should not be viewed as jurisdictional. That issue, however, was decided against the school board's position in *Strongsville*. In that case, the tax commissioner determined that a board of education's belated filing deprived it of standing and the commissioner of jurisdiction, and we agreed with the BTA's affirmance of that determination. *Strongsville Bd. of Edn. v. Lawrence*, BTA No. 99-A-351, 2000 WL 575128, *1-2 (Apr. 7, 2000), *affirmed Strongsville*, 92 Ohio St.3d at 489-490, 751 N.E.2d 996. Moreover, the *Strongsville* ruling comports with the general doctrine that time-of-filing requirements in administrative proceedings are jurisdictional. *See*

*Performing Arts School of Metro. Toledo, Inc. v. Wilkins*, 104 Ohio St.3d 284, 2004-Ohio-6389, 819 N.E.2d 649, ¶ 19-20 (because filing within the time prescribed by statute was a "jurisdictional concept" that applied to exemption applications, "an owner's joining the application for tax exemption after the deadline for filing the application ha[d] passed" did not cure the lack of standing); *accord Sheldon Rd. Assocs., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 131 Ohio St.3d 201, 2012-Ohio-581, 963 N.E.2d 794, ¶ 18 (the requirement that a valuation complaint be filed by March 31 of the ensuing year has been held to be jurisdictional), citing *Cleveland Mun. School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 105 Ohio St.3d 404, 2005-Ohio-2285, 827 N.E.2d 306, ¶ 13-14.

{¶ 29} Lastly, the school board argues that the declaratory-judgment action that it commenced in the common pleas court is a less efficient remedy because "it could take years for the case to return on appeal to this Court." We do not have the authority, however, to overlook the statutory requirements here in order to accelerate our review of the constitutional issues that the school board advances in its brief.

{¶ 30} At oral argument, the school board's counsel alluded to procedural difficulties with the declaratory-judgment action as a reason why the board should be permitted to intervene in this case. We will not address the propriety of the school board's maintaining a declaratory-judgment action under the present circumstances, nor the merits of the defenses that might be raised in such an action, because those issues are not before us. We do observe, however, that the school board's explanations that events during 2006 lulled it into complacency or that it could not have foreseen the action taken by the legislature in 2011, furnish no basis for ignoring the statutory requirements *in this case*. A party should exercise its rights timely as a safeguard against future contingencies. By the same token, a party that sleeps on its rights will face the consequences of having done so.

### THE OTHER ISSUES PRESENTED IN THIS APPEAL ARE MOOT

{¶ 31} The school board seeks immediate review of its constitutional arguments on the merits. In opposition, the tax commissioner points out that the notice of appeal to the court does not specify the alleged constitutional errors.

{¶ 32} We hold that the additional jurisdictional and merits issues raised in this appeal are moot in light of our determination that the BTA correctly dismissed the school board's appeal from the tax commissioner's determination for lack of standing. We therefore decline to address those issues.

### CONCLUSION

{¶ 33} The BTA acted reasonably and lawfully in determining that the school board lacked standing to appeal because of its failure to comply with R.C. 5715.27(C). We therefore affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

O'NEILL, J., dissents.

———————————

**O'NEILL, J., dissenting.**

{¶ 34} This case demonstrates an example of elevating form over substance, and I must, therefore, respectfully dissent. It is clear that appellant, Cincinnati City School District Board of Education, has a vital interest in whether appellee the city of Cincinnati does, or does not, pay property taxes on the new convention center. This matter is so important, that the Ohio General Assembly passed a law exempting the center from the taxes most other property owners, private and commercial, pay. From a statutory-construction or an equity perspective, it is wholly irrelevant that the board, or anyone affected, did not challenge the tax status in 2006. The new law granting the very special treatment was passed in 2011. The relevant inquiry here should not be into what happened

in 2006 under the old law, but rather should be whether an interested party should have the right to challenge the new law. Due process denies no less.

{¶ 35} The majority is denying appellant its day in court on a technicality. In this case, the action was first originated in 2006 by the city. Admittedly, appellant was asleep at the switch and did not attempt to intervene at that time. However, on September 29, 2011, a new amendment to R.C. 5709.084 became effective that was specifically tailored to make the Duke Energy Center tax exempt, and the amendment was to apply retroactively to the time the convention center was built. The financial consequence to the schools at that time was clear. Just prior to the effective date of the new language, the city and the tax commissioner filed a joint motion asking the Board of Tax Appeals ("BTA") to remand the cause so that the new legislation could be applied. The BTA granted the motion and sent the case back to the tax commissioner. Once the matter was returned to the tax commissioner, appellant attempted to intervene, as it stood to lose millions of dollars for the education of the children of Cincinnati.

{¶ 36} The majority asserts that appellant was properly excluded from this case because it did not take action to intervene back in 2006. The tax commissioner and the city asserted that appellant "waived" the right to challenge the constitutionality of the statute by not filing a notice to participate in the exemption application proceedings in 2006. How could appellant be held to have "waived" a right to challenge legislation five years before it was enacted? Once the BTA remanded the case to the tax commissioner, it was as though the case was starting anew, but with consideration of the recently enacted statutory language. This would have been the ideal time to permit appellant to intervene in the case, as it would be directly affected by the statute. Additionally, it was undisputedly the first time that appellant could challenge the constitutionality of the newly amended statute. That simply could not have been done in 2006 when the amendments were but a vision in a lobbyist's mind.

**{¶ 37}** I would reverse the BTA's decision and remand the case to the tax commissioner with instructions to grant appellant's motion to intervene. This case represents the first and best opportunity for appellant to challenge the constitutionality of R.C. 5709.084 as amended in 2011. Appellant should be given its day in court and be permitted to make any arguments it chooses regarding the constitutionality of the new law, which is directly diminishing the funds available to the schools.

**{¶ 38}** Accordingly, I respectfully dissent.

_____

Frost Brown Todd, L.L.C., David C. Olson, and Matthew C. Blickensderfer; and Daniel J. Hoying, Cincinnati School District Assistant General Counsel, for appellant.

Michael DeWine, Attorney General, and Daniel W. Fausey, Assistant Attorney General, for appellee tax commissioner.

Bricker & Eckler, L.L.P., Richard S. Lovering, and Jonathan T. Brollier, for appellee city of Cincinnati.

_____