[Cite as *Williams v. McMillian*, 2019-Ohio-3275.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ANTHONY WILLIAMS,                   :

    Plaintiff-Appellant,        :

    v.                          :

MELISSA MCMILLIAN,                  :

    Defendant-Appellee.         :

No. 107570

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED AND VACATED IN PART
**RELEASED AND JOURNALIZED:**  August 15, 2019

---

Civil Appeal from the Shaker Heights Municipal Court
Case No. 17 CVG 00703

---

### *Appearances:*

Rick L. Ferrara, *for appellant.*

Melissa M. McMillian, *pro se.*

SEAN C. GALLAGHER, P.J.:

{¶ 1}    Anthony Williams appeals the judgment entered in his favor in the amount of $1,728.09 and the offsetting judgment entered upon Melissa McMillian's counterclaim in the amount of $1,911.00, both of which stemmed from a landlord-tenant dispute leading to a bench trial in Shaker Heights Municipal Court.  For the

following reasons, we reverse the decision of the trial court and vacate the judgment entered in favor of McMillian, but affirm the judgment entered in favor of Williams.[1]

{¶ 2} McMillian rented a property from Williams for over seven years. In December 2016, Williams took steps to increase the monthly rental fee, which had remained the same since McMillian moved in. McMillian rented the property through a government subsidy program, but she personally paid the $707 monthly rent toward the end of her tenancy. Williams sought an increase to $832 a month and an additional $40 per month for pets. In order for Williams to increase the rental price, McMillian had to sign paperwork and return it to the appropriate authority. McMillian and Williams disagreed with the process and the amount of the increase, including the additional pet fee. By April 2017, their relationship was irreconcilable. Williams provided McMillian with her 30-day notice of terminating the rental agreement as of the end of April and requesting that McMillian vacate the premises. McMillian held over in May and June without paying any rent, although McMillian provided her own 30-day notice of intent to leave in the first week of May, which would have been ineffective to terminate the lease agreement at the end of May and was the same week that Williams initiated the forcible entry and detainer action based on Williams's 30-day notice sent in March. Williams claims McMillian

---

[1] McMillian filed a belated appellee brief. On July 3, 2019, this court granted her motion for leave to file the brief instanter, and that brief was considered for the purposes of this opinion. McMillian was also permitted to appear for oral argument, although in light of the rules of appellate procedure she attended as an appellee and was not permitted to reserve time for a rebuttal argument following the conclusion of appellant's argument.

owed $2,644 for unpaid rent and pet and late fees, which is in part based on the increased rental price.

{¶ 3} McMillian left the property in mid-June. In other words, McMillian held over even from her own notice of termination. Williams claims the property was damaged by McMillian and in support of his damages presented a repair estimate for the front handrail, door, and weatherproofing, totaling $1,895. Williams also offered the testimony of a contractor who stated that the cost to fix the front door, handrail, and tile in the hallway would be at least $1,200. Williams also sought the $475 cost to repair drywall in a bedroom, the replacement cost of damaged fixtures, carpet, and other items, the cost to repair landscaping, and the costs to clean the property.

{¶ 4} McMillian conceded that she damaged the drywall, but she claimed the repair cost was under $300 and she already paid $100 of that cost to the contractor directly. McMillian introduced approximately 90 photographs of the property, claiming that the defects highlighted by Williams were limited to normal wear and tear. McMillian also cross-claimed for her own money damages. In that cross-claim, McMillian claimed Williams was liable for $1,600 because he violated R.C. 5321.16(C) by failing to return her $800 security deposit within 30 days, owed her $111 for the cost of a post office box she used for a forwarding address, and owed her $200 for the cost of food that was destroyed when the refrigerator broke two years before the eviction. She also sought $1,500 in additional damages for emotional distress.

{¶ 5} After the bench trial, the trial court awarded Williams $1,728.09. Nothing in the record establishes how that award was calculated. The trial court also awarded McMillian $1,911.00, which was based on all counterclaims except the emotional distress claim. Before trial, the parties were ordered to produce trial briefs that contained the anticipated evidence to be presented at trial and notified that exclusion of any unproduced evidence "may" result in its exclusion. Williams complied, but McMillian did not. At trial, McMillian was permitted to introduce the photographs of the property and several other pieces of evidence that were from her cellphone, notwithstanding the pretrial order and Williams's objection. Williams unsuccessfully objected to the evidence as constituting "trial by ambush."

{¶ 6} In the first assignment of error, Williams claims that McMillian is not legally entitled to the damages she was awarded. Our review over purely legal questions is de novo. *Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900, ¶ 16, citing *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

{¶ 7} R.C. 5321.16(B) provides that the money held as a security deposit may be applied to the payment of unpaid rent or for damages that were caused by the tenant's failure to comply with R.C. 5321.05, but that any deduction must be itemized and identified in a written notice provided to the tenant within 30 days of the termination of the rental agreement if the tenant must provide a forwarding address. A tenant may recover the amount wrongfully withheld, including reasonable attorney fees based on the landlord's noncompliance with the statutory

section. R.C. 5321.16(C). However, a tenant may recover under that statutory section only if the landlord wrongfully withheld the deposit. *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 29, 476 N.E.2d 1038 (1985). If the security deposit is not wrongfully withheld, a tenant cannot recover damages despite the landlord's noncompliance with R.C. 5321.16(C).

{¶ 8} In this case, the trial court awarded Williams damages totaling $1,728.09. Although it is unclear from the record whether that award was based on the unpaid rent or the damage to the property or a little bit of both, a landlord may lawfully apply the security deposit to both categories of damages. As a matter of law, therefore, Williams was entitled to withhold the security deposit. The security deposit was not wrongfully withheld for the purposes of the statute. *Vardeman*; *McGreevy v. Bassler*, 10th Dist. Franklin No. 09AP-381, 2010-Ohio-126, ¶ 14; *Adaranijo v. Morris Invest. Co.*, 1st Dist. Hamilton No. C-070453, 2008-Ohio-2705. The trial court erred as a matter of law by awarding McMillian the $1,600 in damages based on Williams's failure to timely provide McMillian an itemized breakdown of the withheld security deposit.

{¶ 9} In addition, as it pertains to the counterclaim, McMillian was not legally entitled to recover the costs of her post office box she used as her forwarding address, nor did she provide a reasonable method of calculating the damages based on the cost to replace the food that was damaged as a result of the refrigerator malfunction.

{¶ 10} Nothing in the record demonstrates the legal theory upon which McMillian's claim for the cost of the post office box is based. At trial, McMillian conceded that she obtained the post office box under the anticipation that a court action would ensue following the 30-day letter Williams issued and her decision to hold over the tenancy despite Williams's contractual right to terminate the tenancy. Thus, it was a personal decision based on McMillian holding over her tenancy, which forced Williams to file the eviction action. There was no legal basis presented supporting McMillian's claim to recover the costs of the post office box from Williams.

{¶ 11} With respect to the cost of the food, expressly based on a "week's" worth of school lunches and an $87 grocery bill dated two and one-half weeks before the refrigerator malfunction, the record is devoid of any legal basis for the award of damages. From the record, it appears that the refrigerator was owned and maintained by Williams such that any failures with the appliance were the responsibility of Williams. The question unanswered by the record is whether McMillian advanced the counterclaim under contract principles (which would exist if the lease contemplated that Williams would provide a refrigerator) or under R.C. 5321.04(A)(2), which requires landlords to make all repairs as necessary to keep the property in a fit and habitable condition (the failure to do so demonstrates negligence). Whatever the theory, Williams is not liable for the damages sought. The damages awarded were entirely speculative. *MADFAN, Inc. v. Makris*, 2017-Ohio-979, 86 N.E.3d 707, ¶ 8 (8th Dist.) (damages cannot be speculative); *Quest*

*Workforce Solutions v. Job1USA, Inc.*, 2018-Ohio-3304, 119 N.E.3d 817, ¶ 16 (6th Dist.) (evidence of damages in civil actions is only sufficient if plaintiff provides a reasonable basis for estimating damages).

{¶ 12} According to McMillian, the refrigerator malfunctioned on Wednesday, November 11, 2015, and five days later Williams provided McMillian with a "campus" refrigerator as a temporary solution until a new appliance could be delivered. It was determined after two days that the refrigerator could not be repaired. A permanent replacement was delivered on November 18. In support of her damages, McMillian presented a copy of the grocery receipt for the food she purchased two and a half weeks before the refrigerator malfunctioned. The receipt, even assuming none of the food was consumed during that two-and-a-half-week interval, included nonrefrigerated items, such as breakfast cereals and vegetable oil. As a result, the full amount of the receipt was not recoverable as damages because of the malfunctioning refrigerator, even if it were assumed that McMillian was entitled to the replacement cost of the food as a measure of damages. In addition, there was no evidence presented at trial of the actual amount paid to replace the school lunches. *See, e.g., Kavalec v. Ohio Express, Inc.*, 2016-Ohio-5925, 71 N.E.3d 660, ¶ 37 (8th Dist.) (damages are against the weight of the evidence when the party guesses the amount of damages without presenting evidence supporting the claimed damages). McMillian sought $112.04 (the difference from the $200 sought and the $87.96 grocery receipt) for the school lunches purchased while the refrigerator was broken. Between the 11th and the 16th when Williams provided a temporary

solution, there were only three school days. McMillian needed to purchase only three school lunches because of the lack of a refrigerator or, giving her the benefit of the doubt, five lunches if the temporary solution is disregarded and the date of the final replacement is considered. Thus, the trial court awarded McMillian $22.41—$37.35 as the cost of each school lunch purchased for her daughter ($112.04 / 5 and the same divided by 3). McMillian presented no evidence supporting that award of damages. Even if McMillian were entitled to recover her food costs following the refrigerator malfunction, and whether the claim is based on contract theory or R.C. 5321.04(A)(2), McMillian bore the burden of presenting evidence demonstrating her actual damages or a reasonable method of calculating those damages. In light of the limited evidence she presented, McMillian did not demonstrate that she was entitled to $200 for the cost of school lunches and the food purchased two and one-half weeks before the refrigerator malfunctioned. The award of damages in her favor cannot be affirmed.

{¶ 13} As a result of the foregoing, the entire amount of damages awarded upon McMillian's counterclaim is reversed and hereby vacated. As a matter of law, McMillian was not entitled to the damages awarded.

{¶ 14} In the final two assigned errors, Williams claims that a new trial on the complaint is warranted because either the judgment entered in his favor is against the weight of the evidence or the trial court erred in permitting McMillian to introduce the evidence she presented at trial, which had not been disclosed to Williams before trial. We note that Williams's trial exhibits were not included in the

appellate record. Although a copy of Williams's pretrial brief contains photocopies of the trial exhibits, those reproductions are largely indecipherable. Regardless, relying on the arguments presented, we affirm the judgment entered in Williams's favor. Under App.R. 12(C)(1), if a majority of the appellate panel finds the final judgment to be against the weight of the evidence and has not found any other prejudicial error in any of the particulars assigned in the appellant's brief or has not found that the appellee is entitled to judgment as a matter of law, the appellate court shall reverse the judgment and either weigh the evidence in the record to render a judgment that the trial court should have rendered or remand for further proceedings. When reviewing a claim challenging the weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17.

{¶ 15} In this case, the trial court awarded Williams $1,728.09 based on the evidence presented at trial. Williams claims that he presented evidence of additional damages that were discounted by the trial court. The trial court, sitting as the trier of fact, accepted Williams's claims in part but rejected them in other respects. Nothing in the record, however, establishes an itemized breakdown of the final judgment entered in Williams's favor. Williams did not request findings of fact or

conclusions of law under Civ.R. 52 in order to determine the method used in calculating the final award. Further, and unlike the vacated award in McMillian's favor, we cannot determine the method used to calculate the final judgment in Williams's favor from the damages sought at trial.

{¶ 16} "A party that fails to request findings of fact pursuant to Civ.R. 52 faces an uphill burden of demonstrating that a judgment is against the manifest weight of the evidence." *O'Brien v. O'Brien*, 12th Dist. Butler No. CA2009-11-289, 2010-Ohio-3258, ¶ 9. Upon reviewing the entire record, and on the basis of limited arguments presented, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice by awarding Williams the $1,728.09 in damages out of the approximately $6,000 in damages sought. McMillian presented some evidence that the damages depicted in Williams's pictures were not as severe as claimed. Further, Williams did not demonstrate that he was entitled to the increased rental fees in light of the uncontroverted evidence that the parties never reached an agreement as to the amount of the increase. It was the parties' inability to agree that led to the terminated rental agreement. Williams has not demonstrated that the trier of fact lost its way and created a manifest miscarriage of justice.

{¶ 17} Further, although the trial court permitted McMillian to present documentary evidence at trial that had not been previously disclosed, Williams has not demonstrated prejudice from such a decision. "'The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its

discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court.'" *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 137, quoting *State v. Issa*, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904.

{¶ 18} The pretrial order requiring the parties to file trial briefs that included their anticipated trial evidence also put the parties on notice that the failure to comply could lead to exclusion of the evidence. Thus, Williams was aware that the court would not exclude the evidence solely because of the failure to file a pretrial brief and the court left open the possibility of admitting evidence despite the failure to comply with the pretrial order.

{¶ 19} For the most part, McMillian presented photos at trial that represented the condition of the property when she moved out. Williams's entire argument on this topic is limited to the claim that the trial court abused its discretion because "while some latitude might be warranted during the course of present evidence, McMillian actually obtained an advantage by (1) not producing evidence prior to trial; (2) not following the Rules of Evidence; and (3) not following the rules of Civil Procedure." (Emphasis deleted.) Williams has not demonstrated, let alone provided an explanation for, how McMillian's use of her own photographs of the property prejudiced Williams's right to a fair trial. App.R. 16(A)(7). Although it is a better practice to require parties to exchange evidence ahead of a bench trial in municipal court, even those parties choosing to represent themselves, we cannot say that the trial court's decision in this case warrants a new trial based on the limited

argument presented in this appeal.  App.R. 16(A)(7).  We find that the trial court did not abuse its discretion in admitting McMillian's trial exhibits such as to warrant the granting of a new trial.

{¶ 20} Judgment affirmed in part and reversed and vacated in part.  We remand for the sole purpose of vacating the judgment entered in favor of McMillian.  The judgment in favor of Williams stands as originally entered.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN A. GALLAGHER, J., CONCUR