[Cite as *Elsayed v. Miamisburg by the Mall*, 2021-Ohio-1738.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| EZZAT ELSAYED | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28918 |
| | : | |
| v. | : | Trial Court Case No. 2018-CVF-1869 |
| | : | |
| MIAMISBURG BY THE MALL, et al. | : | (Civil Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of May, 2021.

. . . . . . . . . . .

EZZAT ELSAYED, 9440 White Pine Court, Apartment F, Miamisburg, Ohio 45342
        Plaintiff-Appellee, Pro Se

LAURENCE A. LASKY, Atty. Reg. No. 0002959, 130 West Second Street, Suite 830,
Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Miamisburg by the Mall appeals from a judgment of the Miamisburg Municipal Court, which awarded Ezzat Elsayed $360.64 on his complaint for return of a security deposit, damages, and fees. For the reasons that follow, we will reverse the judgment of the trial court and remand for entry of a judgment awarding Elsayed $15.79.

{¶ 2} On November 21, 2018, Elsayed filed a small claims complaint against a rental complex, Miamisburg by the Mall, in care of Ashleigh Wagner. The complaint sought "punitive damages plus court fees." In January 2019, a default judgment was awarded in Elsayed's favor in the amount of $1,198.

{¶ 3} On April 4, 2019, Elsayed filed a notice of garnishment of property in the amount of $1,280, directed to First National Bank of Central Texas. The notice identified "BRG" as the name on the account.

{¶ 4} On April 12, 2019, counsel for Miamisburg by the Mall filed a "Motion to Stay Bank Attachments" and to conduct a hearing. The motion stated that Ashleigh Wagner formerly had been the manager of the property, but she had left Miamisburg by the Mall's employment in June 2018; after that time, Town Properties managed the property until August 2018, and then BRG Management managed the property. According to the motion, Wagner had never worked for BRG Management. The motion also asserted that "Miamisburg by the Mall" was a trade name, and its statutory agent in November 2018 was SM&R, but SM&R was not named as a party in Elsayed's complaint or notified of the action.

{¶ 5} The court held a hearing on April 23, 2019. It then granted the stay and instructed Miamisburg by the Mall that it had 14 days to file a Civ.R. 60(B) motion to vacate the default judgment. The trial court's order stated that an evidentiary hearing

would be scheduled after Elsayed filed his response to the Civ.R. 60(B) motion.

{¶ 6} On May 1, 2019, Miamisburg by the Mall filed a motion to vacate the default judgment; an affidavit of Rachel Gebhart was attached. Gebhart averred that she was an employee of BRG Management, that she had been the Community Manager of Miamisburg by the Mall since September 2018, and that Wagner previously had been the manager of the property until June 2018. Gebhart further stated that she (Gebhart) was the "authorized representative of BRG Management" who was to review all correspondence sent to Miamisburg by the Mall, and that she never saw any correspondence or notices regarding any legal action filed by Elsayed.

{¶ 7} On May 7, 2019, the magistrate granted the motion to vacate after a hearing, finding that service had not been perfected on the proper party plaintiff.

{¶ 8} On August 2, 2019, Miamisburg by the Mall filed a motion to transfer the case from the small claims division to the municipal court's regular docket. The court granted the motion. Shortly thereafter, Miamisburg by the Mall filed a counterclaim for $750; the counterclaim asserted that Elsayed had caused damage to the unit he had rented at the property and that Miamisburg by the Mall had expended $750, in addition to the amount of his security deposit, to remediate the damage. Specifically, the counterclaim asserted that Elsayed had possessed a cat in the rental unit, which "destroyed the carpet and which left it infested with fleas"; Miamisburg by the Mall alleged that it had had to remove the carpet, apply special paint on the concrete floor at a cost of $250, treat the unit for fleas "three separate times" at a cost of $400, and "prime the walls with stain kill on several occasions after [Elsayed] left to cover the cat smell and the cat scratches" at an additional cost of $400. The property further alleged that the cat had scratched doors in the

apartment, which necessitated repairs. Miamisburg by the Mall asserted that these damages exceeded normal wear and tear. Additionally, the property alleged that Elsayed had filed "a spurious claim for a refund and for nonexistent damages in an attempt to perpetrate a fraud on the Court" and the property owner. Various invoices and photos of the premises were attached to the counterclaim.

{¶ 9} On August 28, 2019, Elsayed answered the counterclaim and filed an amended complaint. The amended complaint stated that Elsayed had paid a $299 security deposit and a $300 pet deposit before the start of his tenancy. He attached his "Move Out Statement," which detailed charges of $400 for additional painting charges and $600 "to seal floor – pet damage." Elsayed asserted that he was entitled to treble damages for the wrongful withholding of his security and pet deposits in an amount of $1,797.

{¶ 10} Miamisburg by the Mall filed an answer to the amended complaint on September 16, 2019. Elsayed filed a second answer to the property's counterclaim on October 15, 2019.

{¶ 11} A trial was held on December 17, 2019 and February 18, 2020. Elsayed appeared pro se, and the property was represented by counsel.

{¶ 12} Ashleigh Wagner testified that she had previously been employed by Miamisburg by the Mall, which was located at 8470 Towson Boulevard. She stated that Elsayed had paid a security deposit of $299 and a pet deposit of $300, which were not returned to him when he moved out. According to Wagner, Elsayed had lived in the apartment for 11 to 12 years. She stated that, after Elsayed vacated the premises, the property's painter "found fleas in the unit." When asked by the magistrate why the

property was entitled to retain Elsayed's deposits, Wagner stated that the property paid to paint the apartment, but in Elsayed's unit it had also been necessary to remove all the baseboards because of pet urine and pet damage. She stated that she believed she had charged Elsayed $240 for removal of the baseboards and had also charged him for flea treatments; she identified invoices reflecting these charges. Wagner testified that "the smell was horrendous" and that the vanity in the bathroom had been covered in pet urine, but she did not charge for the vanity. She stated that the charges were applied against the security deposits.

{¶ 13} Wagner further testified that Elsayed vacated the premises on August 16, 2017, and she "walked the apartment" within five days of his departure; she noticed an "immediate smell of ammonia" from cat urine at the time. Wagner stated that there was a cage in the apartment and that the wear and tear of the carpet "was not normal"; "it was ripped at the seams by an animal." Wagner also testified that the baseboards, the closet doors, and the walls "about a sixth of the way up" were discolored from what she assumed was "cat spraying." Wagner stated that the carpet and carpet pad were removed, the baseboards were removed and replaced, and "kilz" was painted on the walls.

{¶ 14} Elsayed was not charged for the baseboards, the carpet, or the initial painting. Wagner specifically identified six invoices for flea treatments of Elsayed's apartment (Plaintiff's Exhibits 5, 5A, 5B, 5C, 5D, and 5E) which occurred between August and October 2017, beginning two weeks after Elsayed vacated the apartment. The first three invoices were for $101.89 each, and the last three were for $80.44 each; Wagner testified that all of the invoices had been paid to the third-party exterminator.

{¶ 15} Wagner testified that the property incurred an additional expense of $178.68

to seal the concrete floor with "some type of glaze" to seal in the smell. She stated that the closet doors were rusted and "literally disintegrating" and had to be replaced as well, for which Elsayed was not charged. According to Wagner, the unit was painted twice after Elsayed moved out, at a cost of $240 each time; Elsayed was not charged for the first painting, but he was charged for the additional, second painting. Wagner identified photos taken by her during her walk-through of damage to the carpet, walls, and closet doors in the apartment. According to Wagner, Miamisburg by the Mall lost two months of rent because of the time it took to prepare the apartment to re-rent; additionally, the next resident that moved into the apartment was actually released from the lease because that person was "so unhappy with the condition of the apartment."

{¶ 16} Wagner testified that the monthly rental charge for the unit was $595. She stated that, after crediting the $599 security deposits, the amount owed by Elsayed was $563.29. However, she then attempted to clarify that, although she did not have the documentation, there should have been an additional $160 credit for the painting because she had "overestimated," so the actual amount owed over and above the security deposit was $403.29.

{¶ 17} On cross-examination, Wagner stated that she had charged Elsayed for "the large charges" that she "could actually prove" the property had paid to restore the unit; she had not included all of the time expended by the maintenance technicians in labor or "every receipt [from] Home Depot or Mennards for the doors, for the baseboards."

{¶ 18} Miamisburg by the Mall also called Ruth Smith, who worked for the property as a leasing agent with Wagner in September 2017. She testified that she had 20 years of experience and attended the "walk-through" of Elsayed's apartment. She testified

consistently with Wagner about the condition of the apartment and the charges submitted to Elsayed.

{¶ 19} Miamisburg by the Mall also called Allen Moore, the service manager at Extermital Termite and Pest Control. He stated that he brought invoices for four flea treatments that his company had on record for Elsayed's apartment between August and October 2017 and for which it was paid. Moore stated that it was "uncommon" to have to treat one unit that many times.

{¶ 20} Mr. Khan (whose first name was inaudible) testified that he had known Elsayed for more than 10 years and had visited his apartment many times. Khan stated that he last visited Elsayed at Miamisburg by the Mall in August 2017, when Elsayed was about to vacate the property. Khan stated that the carpet was old and worn, but that the apartment was not smelly and that he did not experience any flea bites while he was there.

{¶ 21} At the end of the trial, the court stated that it found Smith and Wagner to be "credible witnesses." It then orally ruled in Miamisburg by the Mall's favor on Elsayed's claims and in Elsayed's favor on the property's counterclaim. Consistent with those rulings, the decision filed by the magistrate on February 20, 2020, indicated "Judgment for Defendant on Plaintiff's claim at Plaintiff's cost" and "Judgment for Plaintiff on the Counterclaim at Defendant's costs." The decision included the notice required by Civ.R. 53(D)(3)(b) that "[a] party shall not assign as error on appeal the Court's adoption of any factual finding or legal conclusion in the Magistrate's Decision * * * unless the party timely and specifically objects in writing to the factual finding or legal conclusion within fourteen (14) days of the filing of the Decision."

**{¶ 22}** Elsayed filed objections to the magistrate's decision on March 5, 2020. He argued that the evidence failed to establish that there were fleas in his apartment and that it smelled like cat urine. Miamisburg by the Mall opposed the objections on March 11, 2020, asserting that the court correctly found that Elsayed had failed "to carry his burden of proof."

**{¶ 23}** In ruling on the objections, the trial court stated, in part:

The Plaintiff asserts that he is entitled to the return of the security deposit he paid in the amount of five hundred ninety-nine dollars * * *. The Defendant asserts that it is entitled to the amount of seven hundred dollars * * * as and for the cost to repair damages to the property which exceeded normal wear and tear.

The Court has conducted an independent de novo review of the Magistrate's Decision in compliance with Civil Rule 53. The Court has made a thorough and complete review of all documents filed in this matter, including the exhibits admitted at the trial on February 18, 2020, and the transcript of that trial.

The Court finds that [Elsayed] rented the premises * * * from [Miamisburg by the Mall] from April 2006 until August 2017.

The Defendant lived in the property he rented * * * for over eleven (11) years. When a tenant vacates a property after a tenancy of eleven (11) years, normal wear and tear typically requires the carpeting to be replaced and the interior walls to be painted. Those expenses are expected and do not exceed normal wear and tear. On the other hand,

damages to the walls and baseboards caused by cat scratching, pet stains on the concrete beneath the carpet, and flea treatments [do] exceed normal wear and tear.

The [Property's] witness, Ashley [sic] Wagner, who is a former employee of the Defendant, testified that when a tenant with a pet vacated a unit, it was the Defendant's normal and standard procedure to flea treat the unit three (3) times. Ms. Wagner testified that when the Plaintiff vacated his unit, the Defendant paid to have the unit flea treated six (6) times. She then testified as to the dates and costs for four (4) of those treatments, but the exhibits admitted by the Defendant only show three (3) different treatments, not four (4) or six (6).

The Defendant is entitled to retain from the Plaintiff's security deposit the amount of one hundred seventy eight dollars and sixty eight cents ($178.68) to have the concrete floor sealed, and two hundred and forty dollars ($240.00) for the additional painting costs (above normal wear and tear), for a total of four hundred eighteen dollars and sixty eight cents ($418.68).

This Court finds that the Plaintiff paid a security deposit in the amount of five hundred ninety-nine dollars ($599.00). The Defendant is entitled to retain four hundred eighteen dollars and sixty-eight cents ($418.68) of the Plaintiff's security deposit. The balance remaining on the Plaintiff's security deposit was one hundred eighty dollars and thirty-two cents ($180.32), which was wrongfully withheld by the Defendant. Therefore, the

Plaintiff is entitled to recover the amount of three hundred sixty dollars and sixty four cents ($360.64) from the Defendant, pursuant to O.R.C. § 5321.16.

| | |
|---|---|
| Plaintiff's Security Deposit | $599.00 |
| Floor Sealing | - $178.68 |
| Painting | - $240.00 |
| Subtotal | $180.32 |
| Double Damages | +$180.32 |
| TOTAL | $360.64 |

It is hereby ordered that the Magistrate's Decision dated February 20, 2020 finding in favor of the Defendant on the Plaintiff's complaint is hereby OVERRULED, and the Magistrate's finding in favor of the Plaintiff on the Defendant's counterclaim is SUSTAINED.

IT IS HEREBY ORDERED Judgment is awarded to the Plaintiff, EZZAT ELSAYED, and against the Defendant, MIAMISBURG BY THE MALL, in the amount of three hundred sixty dollars and sixty-four cents ($360.64), plus 5% annum statutory interest, and court costs.

{¶ 24} Miamisburg by the Mall asserts one assignment of error on appeal from the trial court's decision:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY REVERSING THE MAGISTRATE'S DECISION BASED ON A MISAPPLICATION OF THE LAW REGARDING O.R.C. SECTION 5321.16.

{¶ 25} Miamisburg by the Mall agrees with the court's conclusions that damage to the walls and baseboards caused by cat scratching, the pet stains on the concrete beneath the carpet, and the need for flea treatments exceeded normal wear and tear. The property also agrees with the trial court's assessment of damages owed by Elsayed

in the amount of $178.68 to seal the concrete floors and $240 for the additional painting costs beyond normal wear and tear. However, it asserts that the trial court "completely missed the last part of the damages (flea treatments)," the cost of which it did not include at all, even though it held in the prior paragraph that the need for flea treatments had exceeded ordinary wear and tear.

{¶ 26} Miamisburg by the Mall asserts that the trial court "completely misunderstood and misinterpreted" the testimony of Wagner relating to flea treatments and that Wagner "never testified" that the property had "a standard procedure" regarding treatment for fleas when a tenant with a pet vacated a unit. The property argues that Wagner testified "specifically about whether six applications for flea treatments was normal along with sealing the concrete floor," about the inability to rent the apartment for two months while the damage to the unit was being addressed, and about four specific flea treatments. Miamisburg by the Mall argues that the trial court "erred in its ultimate application of the law pertaining to security deposits" because it (Miamisburg by the Mall) was entitled to assess damages against Elsayed "for the four * * * flea treatments because they [were] in excess of ordinary wear and tear."

{¶ 27} Miamisburg by the Mall asserts that the trial court should have at least found that Elsayed was liable to it for damages in the amount of $761.89: $343.21 for flea treatments, $240 for additional painting, and $178.68 to seal the floor. Accounting for those damages, he would have owed the property $162.89. The property also argues that the evidence supported "an even greater" damage award, including lost rent for two months as a result of Elsayed's damage to the premises. Miamisburg by the Mall asserts that, if two months of lost rent ($1,998.00) were added to $162.89, it was entitled to

$2,160.89 in damages. Finally, the property asserts that R.C. 5321.16 requires the trial court to "allow a landlord to apply all expenses against a tenant's security deposit * * * that are beyond ordinary wear and tear," and there was "ample evidence" that Elsayed was liable for damages well in excess of his security deposit. As such, Miamisburg by the Mall urges us to reverse the trial court's judgment and remand with specific instructions to award damages to it.

{¶ 28} In response, Elsayed points out that Miamisburg by the Mall kept his security deposit of $599 and that he was entitled to punitive damages for the property's refusal to return his security deposit. He argues that he should not be held responsible for the invoices related to fleas because "no fleas were seen and no one was bitten by any insect including cat fleas" while he resided there or after he vacated the premises. He also contends that he should not have been charged $240 for a second coat of paint "because for four years it was never painted, therefore walls needed to have more coats." Elsayed also argues that he should not have been charged for sealing the floor because of pet damage, pointing out that the carpet and pad were very old. Elsayed requests judgment "for wrongful withholding" of his security deposits in the amount of $1,198.00, plus punitive damages.

{¶ 29} The Tenth District had held:

In general, "[a]n award of damages in a landlord-tenant dispute is governed by a manifest-weight-of-the-evidence review." *Hensel v. Childress*, 1st Dist, 2019-Ohio-3934, 145 N.E.3d 1159, ¶ 24. Under this standard, "[a] verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as

being against the manifest weight of the evidence."  *Sonis v. Rasner*, 8th Dist., 2015-Ohio-3028, 39 N.E.3d 871, ¶ 52, citing *Domaradzki v. Sliwinski*, 8th Dist. No. 94975, 2011-Ohio-2259, ¶ 6; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

By contrast, this court's review over "purely legal questions is de novo."  *Williams v. McMillian*, 8th Dist. No. 107570, 2019-Ohio-3275, ¶ 6. In this respect, "[a]n appellate court reviews a question of law challenging the trial court's measure of damages de novo."  *MacDonald v. Authentic Invests., LLC,* 10th Dist. No. 15AP-801, 2016-Ohio-4640, ¶ 40.

Conflicts between a landlord and tenant "are governed by R.C. Chapter 5321, which embodies what is commonly known as the Ohio Landlord-Tenant Act."  *Whitestone Co. v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233, ¶ 7, citing *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 26, 476 N.E.2d 1038 (1985).  That Act "codifies Ohio law regarding rental agreements for residential premises and governs the rights and duties of both landlords and tenants."  *Id.*  The provisions of R.C. 5321.16(B) and (C) "address termination of the tenancy, including the rights and duties of the landlord and tenant as to the disposition of rental security deposits." *Id.*
*Levine v. Kellogg*, 2020-Ohio-1246, 153 N.E.3d 663, ¶ 33-35 (10th Dist.).

{¶ 30} R.C. 5321.16 provides in part:

(B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the

landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. * * *

(C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees.

{¶ 31} "Thus, in accordance with R.C. 5321.16(B), 'a landlord is obligated to return funds held as a security deposit unless those funds are applied toward the payment of past due rent or reduced by damages suffered by the landlord because of the tenant's failure to maintain the premises.' "  *Levine* at ¶ 37, citing *Warner v. Evans,* 9th Dist. Summit No. 27536, 2015-Ohio-2022, ¶ 7.

{¶ 32} "R.C. 5321.05 sets forth 'the obligations of the tenant with respect to upkeep and maintenance of an apartment holding a tenant liable for extraordinary damages which are not the result of normal wear and tear.' "  *Id.* at ¶ 38, citing *Bibler v. Nash*, 3d Dist. Hancock No. 5-05-09, 2005-Ohio-5036, ¶ 18.

{¶ 33} As further noted in *Levine*:

A landlord "may only recover damages from the tenant for violations of R.C. 5321.05 or because of violations of the lease."  *Kelley v. Johnston*, 4th Dist. No. 01CA5, 2001 WL 1479243 (Nov. 14, 2001).   Under Ohio law, "tenants are liable for waste; however, they are generally not liable to landlords for damages attributed to ordinary wear and tear," and "[i]f damage is not of the type specified in R.C. 5321.05 or the lease, it will normally be considered ordinary wear and tear."  *Id.   See also Hensel* at

¶ 26 ("A tenant is under a duty to return the premises to the landlord in substantially as good a condition as when received, but the landlord is not entitled to receive compensation for damages resulting from reasonable wear and tear."). Further, "the landlord bears the burden of submitting sufficient evidence to link the damages to the tenant." *Johnston.* In order to establish this necessary link, "the landlord must generally present evidence regarding the condition of the premises both before the tenant moves in and after he moves out." *Estie Invest. Co. v. Braff,* 11th Dist. No. 2017-L-172, 2018-Ohio-4378, ¶ 26.

*Id.* at ¶ 40.

{¶ 34} Elsayed's lease agreement, which was entered on May 1, 2011, and was attached to Miamisburg by the Mall's counterclaim, provided in part:

3. Security Deposit. You are depositing with us $299.00 which is security for the faithful performance of the Lease. This security deposit shall serve as a fund from which we may reimburse ourselves to compensate for unreasonable wear and tear of the Apartment on your part or resulting from your failure to maintain the Apartment as required by this Lease, and/or for any other amounts due and owing or which may become due and owing after the end of the Term of this Lease including amounts due us for damages we suffer by your failure to comply with the applicable state law or amounts due and owing or which may become due and owing under Section 4 or other sections of this Lease. * * *

* * *

7.    Repair and Maintenance:    Surrender of Apartment.    You shall maintain your Apartment in good repair and in a clean, sanitary condition and shall be responsible for all ordinary maintenance, as provided for under Section 5321.05 of the Ohio Revised Code.   You agree that the apartment is now in good repair, and, at the Termination of this Lease, you shall deliver and surrender your apartment to us in the same condition it was on the first day of the Term of the Lease, normal wear and tear excepted.

{¶ 35} Initially, we note that Miamisburg by the Mall's counterclaim sought damages for unreasonable wear and tear to the premises in the amount of $750, with no mention of lost rent.   Wagner testified, however, that the property "lost two months of rent in the time it took to turn the apartment," at a cost of $595 per month.   Miamisburg by the Mall also did not object to the magistrate's failure to award lost rent.   Thus, we conclude that the property waived any argument regarding lost rent.   *See DMHA v. Macksteder*, 2d Dist. Montgomery No. 19253, 2005-Ohio-1225, ¶ 5.

{¶ 36} Further, while Wagner testified that the property spent $178.66 to seal the concrete floor after the carpet and pad were removed, she did not indicate who performed the work, and there was no invoice in the record reflecting such an expense as damages. We conclude that Miamisburg by the Mall was not entitled to deduct the cost of sealing the floor from Elsayed's security deposit.

{¶ 37} Regarding flea treatments, Allen Moore testified that Elsayed's apartment was treated for fleas on August 28, September 19 and 26, and October 3, 2017.   Invoices were admitted into evidence reflecting the following charges:   $101.89 on August 28, 2017, and $80.44 on September 19, 2017, September 26, 2017, and October 3, 2017,

for a total amount paid to Extermital Pest Control of $343.21. Further, Wagner testified that Miamisburg by the Mall paid $240 for the first coat of paint to Elsayed's apartment (consistent with normal wear and tear), with an additional $240 to repaint all ceilings and walls. Defense Exhibit C, an invoice from Dirty Devil's Painting dated November 7, 2017, reflects that multiple units at Miamisburg by the Mall were painted for $240, and that Elsayed's unit was further charged an additional $240 for "All ceilings and walls primed and repainted @ 3coats." Adding that amount to the $343.21 for flea treatments, the record substantiates a total amount of damages suffered by Miamisburg by the Mall due to Elsayed's failure to comply with the lease in the amount of $583.21.

**{¶ 38}** It is undisputed that Elsayed's security deposit was $599 ($299 as stated in the Lease, with an additional $300 deposit for his cat). Charging $583.21 against the security deposit, Elsayed was entitled to a refund of $15.79.

**{¶ 39}** Miamisburg by the Mall's assignment of error is sustained.

**{¶ 40}** The judgment of the trial court is reversed, and the matter is remanded for the trial court to enter judgment in accordance with in this opinion.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Ezzat Elsayed
Laurence A. Lasky
Hon. Robert W. Rettich, III